May it please the court, my name is Julian Baum. I am appearing on behalf of plaintiff, excuse me, and appellant Sharon Bardill. And with the court's permission, I would like to reserve three minutes of my time for rebuttal. We'll keep track of your time, counsel. Thank you, your honor. The facts of this case bring into sharp relief a recurring and difficult issue in the district courts in ERISA cases. And that is, how much deference should the courts grant to the decision of an insurance company not to pay a claim? And in this case, my client is a woman who was tested by the defendant's functional capacity exam, which revealed that she has one quarter of the cardiovascular capacity of an 80-year-old sedentary woman. One quarter of the cardiovascular capacity. In addition- Now, of course, you're here under a very deferential standard of review, are you not? Under Firestone, isn't this a discretionary decision which we have to credit? With respect, your honor, I don't believe that the insurance company carried its burden to invoke discretion, but it's been my argument and assumption both before the district court and before this court that even if this were an abuse of discretion case, that under this court's refinement of the abuse of discretion standard, this decision doesn't stand up. And it doesn't stand up under the standard of review of this court looking at the decision of the district court. And as I understand it as well, just to follow up on my good colleague's question, you really don't take any issue with the determination by the district court that after weighing and carefully thinking about any structural defect against the relevant factors and found that it warranted low level of weight, correct? Correct. The judge below made that determination based on the record without proffered inquiry from outside the record. So we're really not talking about, yeah, this is discretionary, but even though discretionary, we've got a conflict, a little bit of a conflict when the one paying has to weigh. Because even in that, you've already said district court weighed the structural defect and it warranted very little weight, if any. Well, I think I agree with you, but I would add this, that even in the absence of evidence of a serious conflict, that the courts are empowered to, and I would submit required to, apply a degree of skepticism. But based on the district court's determination, it had a low level of weight. That is how the court saw it, and to answer your question directly, I'm not arguing with that. What I'm trying to emphasize is that this is not a case where there is no conflict. If there were no conflict, then the standard would be that of Jordan of any reasonable basis, although I would hasten to point out that any reasonable basis doesn't mean that any basis is reasonable. But as this court pointed out in Abadi, and subsequently, because it takes some time to percolate through the system, that in a case of a structural conflict, and there's no dispute that we have one here, that there is a degree of skepticism to be applied, and the Jordan statement, as this court has said, is no longer the law. And that was said by the author of the Jordan opinion, Judge Kleinfeld. Yes. And as I understand it, you also don't dispute that the plan language unambiguously confers discretionary authority on the plan administrator. I don't dispute that that was what the certificate said, and the certificate specifically says this is not the policy. The terms of the plan are in the policy, and that's particularly significant by virtue of the Supreme Court's ruling in Amara, which postdated the district court's ruling. But as I understand it, you even argued to the district court that the plan vests the plan insurer with discretionary authority. I apologize for my ‑‑ I'm a little hard of hearing. Oh, sorry. I understood that you even argued to the district court from reading what happened at the district court that the plan vests the plan insurer with discretionary authority. Well, I argued, and I think very clearly in my papers, that I was saying that even if you use the abuse of discretion, the facts are so strong here that it gets past that. And what I did was call the court's attention to the fact that it was defendant's burden to invoke it properly and that they hadn't done it. What they had to do in order to invoke abuse of discretion, to invoke the court's deference, is to show that that term, the language was sufficient, if that's what you're asking. There's no dispute about the language. Let me ask you another question just to make sure. It seemed to me that you challenged in the district court the qualifications of Dr. ‑‑ and again, here's me going to kill this name ‑‑ Shiazar Lambert and Dr. Saab, but you don't challenge that on appeal. That is correct, Your Honor. I wanted to limit the grounds I wanted to urge here. Okay. Well, I just wanted to make sure so we knew where you were. Thank you, sir. In this case, I think the deference, the question of deference is important because the facts, I would respectfully submit, are so one‑sided. That's not to say there is no evidence on the other side. In fact, two medical professionals conducted impersonal examinations of your client, right? That was doctor number two, Dr. Saab, and his report acknowledged this is a very sick lady, but he limited his report to saying, well, I'm not going to tell you about her general health. I'm not going to tell you about what her medical records show. All I'm going to say, I'm being very careful. I'm paraphrasing him, of course. Well, you're making your best argument, and to a jury, frankly, to me, I know what he said. Very well, Your Honor. All I'm trying to do is I'm just trying to make sure that you understand the significance of what you're arguing. When two medical professionals conduct a personal exam of your client and say, no, no. That is, Your Honor, with respect, that's not enough. That the court does look routinely and properly to what that is based on. It is not enough that their conclusion is no disability. If, for example, as in this case, the doctor either is explicitly qualifying his opinion so as to not answer the question directly, because he didn't say no, he said no based on this very small thing that I'm looking at. I'm not saying no in reality. I'm saying no based on the limit of what I'm doing. So what I'm answering, Your Honor, is it is not enough in a court of law for the fact to be that the doctor said no and that the court is then powerless or shouldn't look beyond that to see if that no is based on anything. I understand your argument, but then there are two other medical professionals that, as I understand, the insurance company consulted in connection with the claim and those professionals did not have an in-person exam and they also concluded that your client was physically well enough to do the work. With respect, Your Honor, I think that's incorrect. Doctor number one was the doctor whose name I won't try to pronounce. That was during the initial, that was not on the appeal, that was the initial decision. That's the hyphenated name? Yes, sir. That's the one I massacred. Well, I'm not sure you did, Your Honor, but I'm sure I would. So that was doctor number one. On appeal, she was, and that doctor didn't see her. Number two was Dr. Saab. He did see her, and he's the one who said, well, based solely on, you know, what I'm looking at, solely on my examination, she probably can do her job. But he noted all these problems. The third doctor, who I think you're referring to, and there's two more, one is a doctor and one is an occupational therapist, the third doctor was Dr. Barnett. Well, I said medical professional rather than doctor because I was trying to encompass everybody who I thought looked at this particular situation. Yes, and I'm not quibbling with that. I'm just trying to be precise. But the call of your question, I think, is did these two people also say she wasn't disabled? And the answer to that is no. Dr. Barnett significantly said she is without question disabled. Their doctor said she is, and that's a quotation. That's not a paraphrasing. He said she is without question disabled. But based on his report, the company agreed to pay the full benefits for mental disability, which was 24 months. Which it did, and which is awfully curious and incongruous because Dr. Barnett was a psychiatrist, and he was asked, well, does this fit within the mental nervous two-year limitation? And what he said is contrary to what the normal case of a psychiatrist, a consulting psychiatrist might say, well, if she's disabled it's because it's due to the mental aspects. He said she's disabled. And I can't, there is no way to tell, given what's been given to me, whether it is the physical that is causing the mental distress or if the mental distress is primary. And he also cautioned this lady is headed for permanent disability if something doesn't change. So it's curious because on his, it wasn't his exam that led to her being paid for mental disability because he said it's not mental disability. Counselor, you're down to three minutes. If you wish to reserve, you may do so, or it's up to you. I will continue and take my chances at the direction of the court. Very well. Because one of the points I really want to stress here is Ms. Bardill's CEO said, I saw her deteriorate, she can't do her job anymore. Her coworkers said in writing, we watched her deteriorate over time and we watched her struggle to be able to do it, and we see that she's not able to anymore. And the insurance company's own Dr. Barnett said she is without question disabled. Now, against that, you have, at the final appeal, you have the occupational therapist report, which is contradicted by her own findings, her own actual data. She then goes against. In fact, she gets it wrong at some points. In order to defer to the decision that this lady is not ill, even, I think you have to say, well, the CEO says she can't do it. Her coworker says she can't do it. One of our own doctors says she can't do it. But we're going to go the other way. Did Dr. Barnett examine her? I don't believe so. As I understood, he only reviewed the medical records. That's my fairly strong memory as well. He was a psychiatrist. He was a psychiatrist. And so you're saying in this particular situation, the fact that he only reviewed the medical records and a psychiatrist, and so therefore just giving her mental incapacity was not going all the way was wrong? No, sir. I'm saying that he said I can't tell you whether this is a mental nervous disorder and therefore limited to 24 months. What I can tell you is this lady is without question disabled. What I can't answer for you based on the record I've seen is whether the mental nervous is primary or whether the physical is primary. He even suggested what might be looked at, which is thyroid dysfunction. But given all the evidence that defendants acquired, to go back to in the – At each stage, the primary medical care professional at Kaiser, the nurse practitioner, kept answering this and explaining to them why your isolated statements here don't really hold up. Incidentally, nurse practitioner is higher than registered nurse. There was some confusion about that at the district court. The Business and Profession Code addresses that. It is required – I will stop. You don't even have to make that argument here. Thank you, sir. Thank you, counsel. Your time has expired. I thank the court. We will now hear from the insurance company. Counsel, you may proceed. Thank you, Your Honor. My name is Doug Scullion. I'm appearing today on behalf of the respondents, the Lincoln National Life Insurance Company and the remaining respondents. I'd like to focus in on what I think is a key issue on this appeal, which was touched upon by my friend in his argument, which is what is the applicable standard of review? And there's really two levels of review that's at issue here. The first is what was the district court's standard of review of the administrator's decision, and then what is this court's standard of review of the district court decision? And both of these are an issue. There is questions raised about both, so I'd like to spend most of my time on that issue. In the trial court, the plaintiff argued that it was an abusive discretion standard, and the district court concluded the Rule 52 motion and gave judgment on that basis. The appellant did raise a caveat. There was one holdback, and the issue in the district court was successor liability. We have two insurance companies, Jefferson Pilot and Lincoln. Lincoln is the corporate successor for Jefferson Pilot, and the plaintiff reserved the issue of whether there had been a proper delegation of the discretionary authority, which he conceded applied under the policy documents. Now, that issue is not before this court. It's been abandoned on this appeal, so that isn't an issue that you need to consider. The only issue that's been raised are two new issues, which weren't argued, but I'd like to spend some time on them because the standard review is an important issue. So there are two arguments that are being made. The first is that there's an absence of language, that the discretionary language that was contained in the certificate of insurance is not contained in the group policy. And the second argument is there's an absence of evidence that the employer authorized or ratified the discretionary language that's clearly in the certificate, and I'd like to deal with each of those. On the first issue, the appellant is simply wrong. The record does include the group policy, and this is dealt with at page 28 of my brief. There is a certificate of insurance and there is a group policy, and the language is identical. And the title of the language at issue is discretionary authority. There is no issue that that confers discretionary authority on my client to make the disability decision. So that clearly distinguishes the Wiley case that was relied upon by the appellant, where there was conflicting language between certificates and policies. The second argument that's made is that there was this absence of ratification or authorization by the employer. And there's two issues with that. One is it relies on a faulty assumption, and two, it wasn't raised in the trial court, and that creates an issue in terms of the completeness of the record. The faulty assumption is that there was previously some kind of different language, perhaps an absence of the conferral of discretion, and there is no evidence of that. In the cases that the appellant relies on, Gross-Solomon v. Paul Revere is one of them, there was clear evidence in the record that the discretion had changed, the grant of discretion had been given to the insurer in a later issued policy. And so there was a real issue in the district court as to whether that discretion had been ratified or authorized by the employer. There is no evidence of that here. And that leads to the second problem with this issue, which is it's a new issue on appeal. It wasn't argued in the district court. There was no opportunity to address it in the district court. There was no opportunity to, if necessary, supplement the record to address it. So that's exactly the type of argument that the Loja care decision talks about and says ought not to be entertained in the court of appeal if it hasn't been argued in the district court. I'd like to ask you, what's the difference between mental disability and physical disability? If you're mentally unable to do something, how is that distinct? You think the thing, you're one being, and I just would like to get some sense of the difference. Yes, well, I can answer that two ways. I'm not a doctor, so the medical side of it, the best that I can say is that the policy defines what a mental illness is and it's resulting from a condition of the mind. So in this case, keeping it to the facts of this case, we have the appellant who is suffering from depression and anxiety, and the psychiatrist that the insurer consulted concluded that that was a disabling condition, the depression and anxiety, versus not having the strength, as my friend referenced in the functional capacity evaluation, the motor skills and the strength to carry out the requirements of your job. And that is a physical disability. And in this case, the physical disability was the key issue. Well, the mental benefits were awarded. Well, that's right. I was going to get to that. The second issue is that under the policy, mental conditions result in there's a 24-month cap on those benefits. They were awarded in full. So there's no doubt that she received those benefits, and the insurer did reverse itself on that. Now, I don't want to take you all the way through the record, but when the claim was first submitted, there was an attending physician statement that supported it from an internist, and the internist described the appellant's disability as depression and anxiety. And the insurer looked at that internally. There were two people who looked at it internally, concluded that there wasn't any evidence in the medical records that sustained that. They sent that. They contacted the ‑‑ then they contacted a physician, I should say, who concluded that she wasn't physically disabled, but they sent that to a treating psychiatrist who never responded. So at the first stage of the denial, it was a denial of both. But then more evidence came to light after the first denial in the first appeal, and the insurer reversed itself and paid the full benefits. That's right. The practical effect of her being mentally disabled is she couldn't work for two years, and she won't be able to work after that, isn't it? It has the same impact on her ability to perform. Yes, yes. A disability, a mental disability would have the same ability ‑‑ would restrict someone similarly to a physical disability, although there's no evidence in the record of how long that mental disability would last. The psychiatrist who looked at it thought that she was and was very critical of the treatment that she'd be receiving for her psychiatric treatment. But it's just speculation as to how long that might last, because our plan only pays for two years, and that's what was done. It paid for two years. But coming back to the standard of review, which is, I think, the key issue in this case, there's no doubt that it's an abuse of discretion standard that the district court applies, and the district court properly applied that. Now, the second issue that is also at issue is what is your standard of review? And in the appellant's brief, they talk about a motion for summary judgment standard, a de novo review. That's not correct. I concede that we did move for summary judgment, but the district court said that was improper. It's a Rule 52 motion, not a Rule 56 motion, and I'm treating this as a bench trial and gave judgment on that basis. That results in a different standard. It's not de novo. It's de novo to the ‑‑ when you're looking at the choice and application of the standard of review, but you've talked about that. There's no doubt that the abuse of discretion was proper, so the choice was proper, and then the application, as you've referenced, isn't being challenged here. The low level of skepticism because of the structural conflict is not at issue. The appellant does not challenge that. So we are at an abuse of discretion standard, and it's clear that the standard for factual findings by the district court is clear error, and the appellant hasn't provided any evidence of clear error. The district court was very thorough in its review of the administrative record and in concluding that the insurer did not abuse his discretion in reaching the conclusions that it did. And the issue that probably best underscores that is the challenge that's raised in the appellant's brief about the failure to acknowledge the plaintiff's claims of chronic pain. The district court, that was an issue that was presented squarely to the district court. It's the only one of the four substantive challenges that were actually presented to the district court. The district court rejected that and said that's not correct. I've reviewed the entire record, and the district court judge goes through the record and points to all of the areas where chronic pain was acknowledged, talked about, but ultimately the conclusion from the insurer was that chronic pain did not prevent the appellant, the plaintiff, from returning to work. And that's an issue that is reviewed on a clear error, and it's not enough to parse apart certain parts of medical reports. When you look at the totality of the record in my submission, it's clearly correct, but it's certainly not clearly incorrect, which is the standard clear error. There are four substantive challenges that were raised. One is dealing with ERISA regulations, and I canvassed that in my brief. The issue there is whether my client met the ERISA regulations, and I point out that the regulations only require a single level of appeal as opposed to two levels of appeal, which is what my client used. So the challenge that's being made by the appellant is to the second level of appeal, which isn't covered by the regulations. But even if it was, we went to a functional capacity evaluation, and that person who conducted the functional capacity evaluation qualifies as a medical professional. And then the other two arguments that are raised, I've already talked about the disabling chronic pain. The only other two issues that were raised in the brief, one was the idea that there was an equivocal medical report and that we relied on that, and that somehow results in an abuse of discretion. And then secondly, there's a challenge to the district court's reference in the district court's ruling to the fact that the appellant took a two-week Panama cruise the day that she claimed that she was no longer capable of working, that she was doing housework and was able to do housework around the house and took frequent daily walks. The district court did reference that, and there's no doubt about that, but it's not the sole basis for the district court's ruling. In fact, it's mentioned at the end of the district court's ruling. It's simply part of the totality of the record that the district court spent time reviewing. So neither of those factors, Dr. Saab's report, I would suggest, isn't equivocal. If you look at it, he's critical of the psychiatric treatment and wonders about that, but concludes that she could return to work. But even if it was equivocal, it's only one of many reports that were relied on by the insurer in this case. And as the district court found, the only medical professional who concluded that the plaintiff was unable to work was the nurse practitioner, and the insurer reviewed that. But based on the weight of the medical evidence to the contrary, there were a number of other medical professionals, both from the plaintiff as well as from the insurer, that concluded she could return to work. The district court ruled that my client did not abuse his discretion in denying the claim for long-term benefits. Unless there's any other questions, I will conclude. No further questions. Thank you, counsel. The case just argued will be submitted for decision.
judges: Noonan, O'scannlain, Smith